IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

LAUREDA J. MUNCY,

      Plaintiff,

v.                        CASE NO. 2:06-cv-00904

MICHAEL J. ASTRUE,
Commissioner of Social Security[1],

      Defendant.

## M E M O R A N D U M    O P I N I O N

    This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for Supplemental Security Income ("SSI"), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  This case is presently pending before the court on Plaintiff's Motion for Judgment on the Pleadings or, in the Alternative, to remand the Case to the Defendant and Defendant's Brief in Support of Judgment on the Pleadings.  Both parties have consented in writing to a decision by the United States Magistrate Judge.

    Plaintiff, Laureda Jo Muncy (hereinafter referred to as "Claimant"), filed an application for SSI on January 4, 2005, alleging disability as of November 18, 2002, due to foot and back

---

[1]   On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.  Under Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as the defendant in this action.

pain, leg numbness, depression and asthma.  (Tr. at 52-53, 69, 80, 145.)  The claim was denied initially and upon reconsideration. (Tr. at 31-35, 37-39.)  On June 17, 2005, Claimant requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. at 40.) The hearing was held on June 21, 2006, before the Honorable Harry C. Taylor, II.  (Tr. at 292-313.)  By decision dated July 18, 2006, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 11-19.)  The ALJ's decision became the final decision of the Commissioner on September 1, 2006, when the Appeals Council denied Claimant's request for review.  (Tr. at 5-7.)  On October 23, 2006, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 416.920 (2006).  If an individual is found "not disabled" at any

2

step, further inquiry is unnecessary. Id. § 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f) (2006). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v.

3

Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 13.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of status post right ankle fracture involving open reduction and internal fixation and obesity. (Tr. at 13.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 15.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 16, 19.) Claimant has no past relevant work. (Tr. at 18.) Finally, the ALJ concluded that Claimant could perform sedentary jobs such as clerk, sorter and service clerk, which exist in significant numbers in the national economy. (Tr. at 19.) On this basis, benefits were denied. (Tr. at 19.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept
> as sufficient to support a particular
> conclusion. It consists of more than a mere
> scintilla of evidence but may be somewhat less

4

than a preponderance. If there is evidence to
justify a refusal to direct a verdict were the
case before a jury, then there is 'substantial
evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting

Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)).

Additionally, the Commissioner, not the court, is charged with

resolving conflicts in the evidence.   Hays v.Sullivan, 907 F.2d

1453, 1456 (4th Cir. 1990).   Nevertheless, the courts "must not

abdicate their traditional functions; they cannot escape their duty

to scrutinize the record as a whole to determine whether the

conclusions reached are rational."  Oppenheim v. Finch, 495 F.2d

396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the

Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was twenty-eight years old at the time of the

administrative hearing.  (Tr. at 295.)  She was five foot, three

inches tall and weighed 307 pounds.  (Tr. at 295.)  Claimant

attended school through the ninth grade and obtained a GED.  (Tr.

at 297.)  Claimant has no past relevant work history.  (Tr. at

298.)

The Medical Record

The court has reviewed all evidence of record, including the

medical evidence of record, and will summarize it briefly below.

Claimant sustained an open fracture to her right ankle

5

following a motor vehicle accident on November 18, 2002.  Claimant had grade 2 open right ankle and subtalar dislocations, rupture of the right ankle lateral ligament complex and open fracture of the right medial malleolus.  (Tr. at 169.)  Claimant underwent irrigation and debridement of open dislocation, open treatment of open right ankle and right subtalar dislocations and open treatment of right medial malleolus fracture.  (Tr. at 162, 169.)  CT scans of Claimant's chest, abdomen, pelvis and cervical spine were negative.  (Tr. at 171-72.)

Treatment notes dated December 9, 2002, January 21, 2003, and February 3, 2003, from John M. Iaquinto, M.D., Claimant's treating physician, generally indicate that Claimant's ankle healed well after her surgery.  (Tr. at 188-90.)  On March 4, 2003, Claimant reported her pain had improved.  Dr. Iaquinto recommended that Claimant discontinue use of the walker and begin weaning her use of a brace.  Claimant could return to work on April 1, 2003.  (Tr. at 187.)  On June 24, 2003, Dr. Iaquinto examined Claimant seven months out from her ankle injury.  Claimant was ambulating full weight bearing with a brace.  Claimant reported ankle pain and instability.  Dr. Iaquinto recommended cane use for stability and symptomatic improvement.  Dr. Iaquinto told Claimant that injuries of this type typically have persistent symptoms, even after the patient has reached maximum medical improvement.  He told Claimant she could engage in unrestricted activities as tolerated.  (Tr. at

186.)   On July 3, 2003, Dr. Iaquinto stated that Claimant's prognosis was guarded.   He further stated that as of Claimant's last evaluation on June 24, 2003, he "placed no specific restrictions on her, although she was still using a cane at the time of my last evaluation." (Tr. at 183.)

On July 1, 2003, Robert W. Lowe, M.D. examined Claimant and diagnosed L/5, S/1 spondylolisthesis, congenital.   The neurological examination was normal.   (Tr. at 184-85.)

On September 2, 2003, Claimant underwent a psychological evaluation by Douglas W. Fischer, M.A.   Mr. Fischer made no diagnosis on Axis I or Axis II and rated Claimant's GAF at 70. (Tr. at 204.)

On October 21, 2003, Joseph J. Koenigsmark, D.O. conducted a consultative examination.   He diagnosed history of ankle fracture following motor vehicle accident, obesity and possible psychiatric overlay with depression and use of assistive device.   (Tr. at 228.) He felt that Claimant would be able to perform most work-related activities if she were able to sit and stand as needed and lift the appropriate amount for her size.   (Tr. at 229.)

A state agency medical source completed a Psychiatric Review Technique form on November 24, 2003, and opined that Claimant had no medically determinable mental impairment.   (Tr. at 241-53.)

On July 13, 2004, Jules Barefoot, M.D. conducted a consultative examination.   He diagnosed status post open reduction

internal fixation of a right ankle fracture for a subtalar dislocation and an open right medial malleolus fracture, musculoskeletal low back pain and chronic headaches. (Tr. at 258.) On examination, Claimant had a moderate amount of edema present in her ankle and foot as well as diminished range of motion in her right ankle as previously noted. Her gait was minimally antalgic, however, she was able to ambulate without the use of an assistive device. (Tr. at 258.) Claimant was able to sit, stand and move about, but her ability to repetitively bend, squat, crawl and climb appeared to be impaired. (Tr. at 259.)

On July 23, 2004, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform light level work, with an occasional ability to climb ramps and stairs, balance, stoop, kneel, crouch and crawl, that Claimant should never climb ladders, ropes and scaffolds, that she should avoid concentrated exposure to extreme cold, vibration and even moderate exposure to hazards including heights. (Tr. at 261-68.)

On February 15, 2005, Stephen Nutter, M.D. conducted a consultative orthopedic examination. Dr. Nutter diagnosed arthralgia (probably post traumatic and degenerative arthritis), and chronic back and neck pain (chronic cervical and lumbosacral strain without evidence of radiculopathy). Claimant had reduced range of motion of the ankle, pain and tenderness in both knees

with reduced range of motion of the knees mainly due to obesity. Range of motion of the elbows and hips was reduced due to obesity as well. Claimant was unable to squat because of ankle pain and ambulates with a limping gait. There was no evidence of rheumatoid arthritis. Claimant had pain and tenderness in the cervical and lumbar spine with minimally decreased range of motion. Straight leg raising test was negative for radiculopathy. The neurological examination was normal. (Tr. at 270-74.)

A State agency medical source completed a Physical Residual Functional Capacity Assessment on March 1, 2005, and opined that Claimant could perform medium level work, with an occasional ability to climb, balance, stoop, kneel, crouch and crawl, and a need to avoid concentrated exposure to extreme cold, vibration, fumes, odors, gases and poor ventilation and hazards. (Tr. at 276-82.)

A State agency medical source completed a Physical Residual Functional Capacity Assessment on May 24, 2005, and opined that Claimant was limited to light work, reduced by an occasional ability to climb ramps and stairs, stoop, kneel, crouch and crawl, an inability to balance or climb ladders, ropes and scaffolds, a need to avoid concentrated exposure to extreme heat and vibration and a need to avoid even moderate exposure to hazards. (Tr. at 284-91.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence. In the alternative, Claimant argues that her case should be remanded because a substantial portion of the hearing transcript is inaudible. (Pl.'s Br. at 10-12.)

The Commissioner argues that substantial evidence supports the Commissioner's decision that Claimant can perform a limited range of sedentary work, and, therefore, is not disabled. Regarding the inaudible portions of the hearing transcript, the Commissioner argues that the few inaudible portions of the transcript do not prevent the court from conducting a meaningful review. (Def.'s Br. at 10-17.)

Claimant does not expound on her argument as to why she believes the ALJ's decision is not supported by substantial evidence. The ALJ determined that Claimant had the severe impairments of status post right ankle fracture involving open reduction and internal fixation and obesity. (Tr. at 13.) He went on to find that Claimant did not meet the Listings (Tr. at 15), and that she was limited to light level work, a need to avoid moderate exposure to hazards such as heights and machinery, heat and cold, and excessive levels of dust, fumes or other respiratory irritants, that Claimant requires a sit/stand option to address discomfort, has a limping gait, can never climb ropes, ladders or scaffolds or

balance and can occasionally climb ramps and stairs and stoop,
kneel, crouch and crawl. (Tr. at 16.) In response to a
hypothetical question, the vocational expert identified the
sedentary jobs of clerk, sorter and service clerk. (Tr. at 19.)

The ALJ carefully considered all the evidence of record in
arriving at his residual functional capacity finding, and his
findings about Claimant's limitations are supported by substantial
evidence. In particular, the ALJ properly weighed the medical
evidence of record in keeping with the applicable regulation at 20
C.F.R. § 416.927(d) (2006).

Every medical opinion received by the ALJ must be considered
in accordance with the factors set forth in 20 C.F.R. § 416.927(d)
(2006). These factors include: (1) length of the treatment
relationship and frequency of evaluation, (2) nature and extent of
the treatment relationship, (3) supportability, (4) consistency (5)
specialization, and (6) various other factors. Additionally, the
regulations state that the Commissioner "will always give good
reasons in our notice of determination or decision for the weight
we give your treating source's opinion." Id. § 416.927(d)(2).

Under § 416.927(d)(1), more weight is given to an examiner
than to a non-examiner. Section 416.927(d)(2) provides that more
weight will be given to treating sources than to examining sources
(and, of course, than to non-examining sources). Section
416.927(d)(2)(i) states that the longer a treating source treats a

11

claimant, the more weight the source's opinion will be given. Under § 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion.   Sections 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty).

Claimant's treating physician did not opine as to any limitations Claimant suffered as a result of her impairments. Indeed, Dr. Iaquinto opined on July 3, 2003, that Claimant had no specific restrictions.  (Tr. at 183.)  The ALJ adopted the opinion of Dr. Lambrechts, the State agency medical source who completed a Physical Residual Functional Capacity Assessment on May 24, 2005, noting that Dr. Lambrechts' opinion had taken into account the effect of Claimant's obesity.   (Tr. at 18.)   Although Dr. Lambrechts was a nonexamining source, his opinion is largely consistent with the remaining evidence of record from treating and examining sources, including Dr. Iaquinto, Dr. Lowe, Dr. Barefoot and Dr. Nutter.  To the extent Dr. Koenigsmark opined that Claimant required a sit and stand option, the ALJ added this to his residual functional capacity finding.  Finally, Dr. Lambrechts opined that

Claimant should avoid concentrated exposure to extreme heat and vibration and even moderate exposure to hazards, but the ALJ found Claimant more limited in that she should avoid even moderate exposure not just to hazards, but also to heat and cold and excessive levels of dust, fumes or other respiratory irritants.[2] In short, the ALJ's residual functional capacity finding reflects those limitations supported by the substantial evidence of record from treating, examining and nonexamining sources alike.

The ALJ's pain and credibility findings are consistent with the applicable regulations, case law and social security ruling ("SSR") and are supported by substantial evidence. 20 C.F.R. § 416.929(b) (2006); SSR 96-7p, 1996 WL 374186 (July 2, 1996); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). The ALJ's decision contains a thorough consideration of Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain, precipitating and aggravating factors and Claimant's medication. (Tr. at 16-17.) The ALJ provided a sufficient explanation for his determination that Claimant's testimony about her subjective symptoms was not entirely credible. The ALJ relied on the objective medical evidence of record indicating conservative treatment and Claimant's significant daily activities such as

---

[2]   The ALJ did not find in his residual functional capacity finding, that Claimant should avoid concentrated exposure to vibration, but, as discussed further below, the jobs identified by the vocational expert do not involve exposure to vibration.

13

caring for her children, among other things.   (Tr. at 16-18.)

Claimant argues in the alternative, that her case should be remanded because "a substantial portion of the testimony of the vocational witness at the Administrative Law Judge hearing was 'Inaudible' and therefore, the record before the Court was incomplete." (Pl.'s Br. at 10.)   Claimant asserts that "it is impossible to determine not only the complete hypothetical posed to the vocational expert but also the complete response to the hypothetical." (Pl.'s Br. at 12.)

The relevant portion of the transcript from the administrative hearing is as follows:

> Q [ALJ] In this Title XVI case the Claimant has the protective filing date of January the 4th of 2005.   It looks like that would be 27 at that time.   She is very [INAUDIBLE].   She has one day of employment [INAUDIBLE]. I'd ask you if you would to hypothetically assume an individual who's age is 27 with education [INAUDIBLE] person suffers from compound fracture of the right ankle, back and neck pain, with low back pain radiating to the right leg, she walks with a limp and cane and she is obese at 5'21/2" and approximately 300 pounds, apparently also suffers from asthma with some pulmonary insufficiency [INAUDIBLE].   Exhibit number 13F [INAUDIBLE] notes, this exhibit indicates she should avoid even moderate exposure [INAUDIBLE], she should avoid concentrated exposure to vibrations as well as heat, with due respects to the state agency I'm going to add she should avoid concentrated exposure to extreme cold as well as fumes, odors, dust, gases and poor ventilation.   She could maybe lift 20 pounds occasionally, 10 pounds frequently, [INAUDIBLE], the exhibit indicates that she should never climb ladders or scaffolds or balance.   She could only occasionally do the other postural movements.   Apparently there is some indication about breathing [INAUDIBLE].   Now if those were her residuals would there be any work such an individual could perform on a sustained basis?

14

A [vocational expert] [INAUDIBLE] sedentary work, Your Honor, based on the alternate positions and postural limitations.  Under unskilled sedentary [INAUDIBLE].

HA: Excuse me.  Excuse me.  Nancy could you speak up just a little please?

VE: Yes.  Do you want me to repeat that or are you okay?

HA: Yes, just read it again and pull your mic up closer I think's what it is.  Yeah.

VE: Under sedentary clerk those would include lost parts, circulation and credit reference clerk, the numbers in the region over 2,100 and in the nation over 407,000.  Sorter clerk, the numbers for the region over 2,500 and in the nation over 388,000.  And service clerk, the numbers in the region over 2,700 and in the nation over 450,000.  Based on the breathing machine, Your Honor, which might take up 30 minutes and that might be hindering break times, those numbers would need to be reduced in my opinion by 20 percent.

ALJ: Okay.  Is there entry-level sedentary jobs?

VE: Yes, sir.

ALJ: And except as noted are your answer [INAUDIBLE] consistent with the DOT?

VE: Yes, sir.
                                    ***
ALJ: Any questions Mr. Lowry?

ATTY: Ms. Shapero if – considering adding to the hypothetical an individual who has swelling of the ankle requiring elevation of the foot during times that she is seated, would that in any way affect her ability to engage in the unskilled sedentary jobs?
VE: In my opinion if a person needed to elevate her ankle at times during the day in a sedentary job I would reduce those jobs again and take into account whether or not that might be a problem [INAUDIBLE].  And that would be in my opinion [INAUDIBLE].

ATTY: Excuse me.  I'm sorry, she was coughing, I didn't hear your answer.

15

VE: I would still be able to [INAUDIBLE].

ATTY: To what extent would that reduce the numbers?

VE: Another 20 percent.

(Tr. at 310-11.)

Although there are inaudible portions of the administrative hearing, the court finds that this does not necessitate remand. Claimant's counsel was present at the administrative hearing, yet Claimant does not indicate how the hypothetical question was deficient. Instead, Claimant contends that because portions of it are inaudible, it is impossible to determine the complete hypothetical question to the vocational expert and the vocational expert's response. The court disagrees.

Despite the inaudible portions of the administrative hearing, it is clear that the ALJ's residual functional capacity finding largely mirrors the hypothetical question, and that the vocational expert identified a significant number of jobs Claimant could perform. Notably, even when limitations from Claimant's counsel were included, the vocational expert was still able to identify jobs.

The ALJ's residual functional capacity finding in his decision included the following limitations:

1.    lift twenty pounds occasionally, ten pounds frequently;
2.   walk or stand the greater part of an eight hour work day and sit the remainder;
3.   avoid moderate exposure to hazards such as heights and machinery, heat and cold and excessive levels of

dust, fumes or other respiratory irritants;
4.  sit/stand option to address discomfort, has a limping gait;
5.  never climb ropes, ladders or scaffolds or balance; and
6.  occasionally climb ramps, stairs, stoop, kneel, crouch and crawl.

(Tr. at 16.)

The ALJ's hypothetical question includes the limitations listed above at 1, 5 (with the exception of climbing ropes), and 6. Notably, the ALJ references in the hypothetical question, the Physical Residual Functional Capacity Assessment completed by Dr. Lambrechts (Exhibit 13F), and adopted by the ALJ in his decision. It is a reasonable interpretation of the ALJ's hypothetical question to conclude that the inaudible portions included the other limitations mentioned in Exhibit 13F, including the limitations at number 2.  The vocational expert's response to the hypothetical question, in which she states Claimant could perform "sedentary work, ... based on the alternate positions and postural limitations" (Tr. at 311), indicates a sit/stand option (number 4) was included in the hypothetical question.  Earlier in the hypothetical question, the ALJ mentioned that Claimant "walks with a limp."  (Tr. at 310.) Regarding limitation number 3, a need to avoid moderate exposure to hazards such as heights and machinery, heat and cold and excessive levels of dust, fumes or other respiratory irritants, Dr. Lambrecht opined in Exhibit 13F that Claimant had only a need to avoid concentrated exposure to extreme

17

heat and vibration and moderate exposure to hazards (machinery, heights, etc.).    In the hypothetical question and residual functional capacity finding, the ALJ did not include a limitation about vibration, but imposed a greater limitation in the remaining areas by stating that Claimant must avoid even moderate exposure to hazards, heat and cold and excessive levels of dust, fumes and other respiratory irritants.

While the ALJ did not include vibration in the residual function capacity finding or, possibly, the hypothetical question, the jobs identified by the vocational expert do not include exposure to vibration.    Department of Labor, Dictionary of Occupational Titles (DOT), 209.687-022 (sorter), 221.367-070 (service clerk) and 209.362-018 (credit reference clerk) (4th ed. 1991).   Likewise, it is unclear whether the limitation of never climbing ropes was included in the hypothetical question, but none of the jobs listed above involve climbing.   Id.

It is unfortunate that portions of the hearing transcript are inaudible.    However, when reviewed carefully, it can be ascertained, even with the inaudible portions, that the ALJ's hypothetical question largely included those limitations found in the residual functional capacity finding, a finding that the court has concluded is supported by substantial evidence. Moreover, the vocational expert identified a significant number of jobs in response and even was able to identify jobs when the hypothetical

18

question was further limited by Claimant's counsel.

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is supported by substantial evidence.   Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings is DENIED the final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this court.

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.

ENTER: March 7, 2008

Mary E. Stanley
United States Magistrate Judge